IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THOMAS JACK,

    Plaintiff,

vs.                                                                                                          No. CIV-06-0013 JC/KBM

JOHN E. POTTER, POSTMASTER
GENERAL, U.S. POSTAL SERVICE,

    Defendant.

## MEMORANDUM OPINION & ORDER

THIS MATTER comes before the Court on Defendant's *Motion for Summary Judgment*, filed on February 2, 2007 (*Doc.* 38)("Motion"). The Court, having considered the Motion, the parties' briefs, the relevant authority, and being otherwise fully advised, grants the Motion.

**I.**     **Background**

The facts below are either undisputed, deemed admitted, or viewed in the light most favorable to Plaintiff as non-moving party. Thomas Jack ("Plaintiff") has been employed by the United States Postal Service ("USPS") since July 6, 1997. At all times material herein, he served as a station manager in Albuquerque, first at the Highland Station and later at the Academy Station. Plaintiff was 49 years old at the time he became station manager of the Highland Station.

Beginning in August of 2003, Stephen Hardin became Plaintiff's supervisor after selecting him to fill a vacant station manager position at the Highland Station. Between September 1, 2004 and November 30, 2004, Hardin was detailed to Santa Fe by the USPS to serve as Postmaster for the Albuquerque District. During the time that Hardin was in Santa Fe,

1

Le Gretta Ross-Rawlins ("Rawlins") served as the District Manager of Customer Service Operations at the Highland Station. On November 30, 2004, Rawlins issued Plaintiff a proposed letter of warning in lieu of a seven (7) calendar day suspension ("Rawlins' Letter"), which Plaintiff received on December 3, 2004. Rawlins' Letter stated that Plaintiff failed to properly administer the Southwest Area Function Two B (F2B) audit protocol for all subordinates at the Highland Station. Other station managers purportedly younger than Plaintiff did not receive proposed letters of warning in lieu of suspension despite Rawlins' instructions prior to her departure that any of the units that had failed the F2B audit should receive corrective action. Resp., Ex. 2, at 17-8. The Highland Station had been failing F2B audits for some time prior to and during Rawlins' detail. There were also problems related to F2B audits at both the Academy and Five Points stations.

On December 6, 2004, Plaintiff submitted a mediation request in response to Rawlins' Letter. Despite USPS policy requiring mediation, mediation was never scheduled, although the discipline proposed in Rawlins' Letter was never imposed either. Plaintiff suffered no loss in pay as a result of Rawlins' Letter. Nonetheless, Plaintiff maintains that Rawlins' Letter was the first of several actions taken by Defendant that altered the terms and conditions of his employment, which resulted in his use of medical leave for psychiatric reasons during much of 2005.

On December 7, 2004, Hardin issued Plaintiff a proposed letter of warning in lieu of a fourteen (14) calendar day suspension ("Hardin's Letter"). Hardin's Letter stated that Plaintiff failed to follow instructions/failed to perform duties as assigned. Again, various other supervisors, purportedly with similar deficiencies, did not receive proposed letters of warning. Plaintiff contends that Hardin's Letter was issued for some of the same reasons as Rawlins'

2

Letter one week earlier and that he had previously addressed the concerns raised in both Rawlins' Letter and Hardin's Letter (collectively "Letters").  On December 7, 2004, Plaintiff submitted a request for mediation in response to Hardin's Letter.  Mediation was never scheduled, though once again, the proposed discipline was never imposed.  Plaintiff suffered no loss in pay as a result of Hardin's Letter, although Plaintiff asserts that this incident also contributed to his use of medical leave and absence from work.

On December 7, 2004, Hardin placed Plaintiff on a Performance Improvement Plan ("PIP") for thirty days as a result of his failure to previously follow instructions with respect to the assignments listed in the PIP.  The PIP consisted of a total of six (6) assignments allegedly geared towards improving Plaintiff's job performance.  Apparently, none of the younger station managers supervised by Hardin were placed on PIPs despite the fact they faced similar allegations of workplace inefficiency.  Plaintiff suffered no loss in pay from his placement on the PIP, though Plaintiff alleges that this action also contributed to his use of medical leave and absence from work.

On December 13, 2004, Plaintiff was involuntarily transferred to the Academy Station.  He maintained his position as station manager, and his pay grade remained the same after the transfer.  On December 16, 2004, Plaintiff sent a letter to Deborah Hill, the Manager of Post Office Operations for the Portland District, requesting a voluntary downgrade and transfer to Hermiston, Oregon, to serve as Postmaster.  On or about December 27, 2004, Hill informed Plaintiff that she was denying his request and that he would have to compete for the position once a vacancy announcement was formally issued.

On January 10, 2005, the USPS issued a vacancy announcement for the Hermiston Postmaster Position.  The announcement stated that only Portland District employees were

eligible to compete for the job.  Nonetheless, Plaintiff submitted an application for the position. On January 18, 2005, Linda Sieren, a Human Resource Specialist for the Portland District, sent an e-mail message to Plaintiff informing him that his application for the position had been received. Sieren advised Plaintiff that, though he did not meet the requirements of the initial announcement, he could still apply for the position non-competitively, as long as he submitted a cover letter requesting non-competitive consideration.  Sieren informed Plaintiff via email that, without the cover letter, his application would be returned as ineligible.  Mot., Ex. 7A.  Plaintiff failed to provide Sieren with the requested cover letter.

Sometime after January 25, 2005, Sieren prepared a selection packet for the position and forwarded it to Hill.  She did not include Plaintiff's application in the selection packet nor did she list him as a qualified applicant in the recommendation memo, purportedly because she never received the requested cover letter.  Hill also spoke with Hardin and Plaintiff speculates that during this conversation, Hardin gave Plaintiff a negative recommendation that influenced Hill's decision to deny his transfer.  On February 15, 2005, Hill selected another individual for the position.  The successful candidate was a level 18 Postmaster who had served as the superintendent of postal operations at the Hermiston Post Office for more than five years.  Had Plaintiff been selected for the Hermiston Postmaster Position, he would have been subjected to an immediate reduction in pay of $4,400.

On January 11, 2005, Hardin issued Plaintiff a Notice of Proposed Reduction in Pay Grade ("Notice") as a result of Plaintiff's failure to follow the instructions in the PIP.  Other employees who had allegedly engaged in similar action were not disciplined.  On January 19, 2005, Joel Wadsworth, a member of the New Mexico State Branch of the National Association of Postal Supervisors, drafted a letter on Plaintiff's behalf strongly contested the Notice, the

4

Letters and the PIP Resp., Ex. 9. Wadsworth wrote that the Notice contained false and erroneous information and was based on issues awaiting mediation. *Id.* He further criticized the PIP as nothing more than a list of instructions designed to achieve the downgrade or removal of Plaintiff. *Id.* On March 10, 2005, James Mercurio, Human Resources Manager, Albuquerque District, issued a letter of decision rescinding the proposed downgrade in the Notice. Plaintiff suffered no loss in pay or benefits, though he alleges that this act also forced him to take leave for work-related stress.

Plaintiff filed a formal complaint with the Equal Employment Opportunity Office ("EEO") on April 11, 2005. On or about October 12, 2005, Plaintiff received the final agency decision on his EEO complaint. On January 6, 2006, Plaintiff filed this suit against John Potter, Postmaster General, alleging age discrimination under the ADEA.[1] Defendant presently moves for summary judgment.

## II.    Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. *See id.*

---

[1]Though not identified as a separate count in the Complaint, in his Reply brief, Plaintiff asserts that he was subjected to a hostile work environment because of his age. This additional age discrimination claim is considered below.

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See id.* at 251. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *See id.* at 325. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *See Anderson*, 477 U.S. at 256. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *See id*. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id*.

## III.  Discussion

### A.  ADEA Claim

Plaintiff alleges he was discriminated against in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. 623(a)(1). In evaluating an ADEA claim based on indirect evidence of discrimination, as here, the Tenth Circuit has adopted the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and its successors. *See, e.g., McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125,

1128 (10th Cir. 1998) (applying *McDonnell Douglas* to ADEA claim).  To bring a successful ADEA claim under this framework, a plaintiff must initially establish a prima facie case of age discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  This burden is "not onerous."  *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).  If the plaintiff can establish a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action.  *McDonnell Douglas*, 411 U.S. at 802.  If the defendant can meet this burden, "summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual."  *Plotke*, 405 F.3d at 1099.

        1.        **Prima Facie Case of Discrimination**

As clarified by the Tenth Circuit in *Sorbo v. UPS*, 432 F.3d 1169, 1173 (10th Cir. 2005), in order to demonstrate a prima facie case of age discrimination, a plaintiff must show that (1) he belongs to the protected age group, (2) his job performance was satisfactory, (3) and adverse employment action was taken against him.  Cases involving adverse action prompted by unsatisfactory performance or misconduct also require a showing of  "circumstances giving rise to an inference of discrimination."  *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004); *see Plotke*, 405 F.3d at 1101.   Nonetheless, this fluid standard should not "be mistaken as an indispensable element of the prima facie case." *Id.* at 1101.

        a.        **Protected Class**

Plaintiff was 49 years old at the time in question.  Thus, it is undisputed that Plaintiff belongs to the protected age group and therefore meets the requirements of the first prong.

        b.        **Satisfactory Job Performance**

With respect to the second prong, the Court must determine whether the Plaintiff "continued to possess the objective qualifications [he] held when [he] was hired, or by [his] own

testimony that [his] work was satisfactory, even when disputed by [his] employer, or by evidence that [he] had held [his] position for a significant period of time." *MacDonald v. Eastern Wyoming Mental Health Cente*r, 941 F.2d 1115, 1121 (10th Cir. 1991). Here, Plaintiff has produced some evidence that he believed his work to be more than satisfactory. Specifically, Plaintiff testified that John Tulega, the Postmaster, informed him that he was a "solid manager" that "would do a great job" for Hill. Mot., Ex. 3, at 25. Though the record is not rife with self-endorsement, Plaintiff's qualified belief is sufficient to meet the requirements of the second prong of the test.[2]

### c. **Adverse Employment Action**

Although the Tenth Circuit continues "to liberally define the term 'adverse employment action' and take a case-by-case approach," *see Hillig v. Rumsfeld*, 381 F.3d 1028,1033 (10th Cir. 2004)(quoting *Aquilino v. Univ. of Kan.*, 268 F.3d 930, 935 (10th Cir. 2001)), the scope of the definition "does not extend to a mere inconvenience or an alteration of job responsibilities." *Tran v. Trs. of the State Colls. in Colo.*, 355 F.3d 1263, 1267 (10th Cir. 2004)(quoting *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000)). Conduct is adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 534 U.S. 742 (1998)*; see also, Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989)(Principal's change in assignment was not an adverse employment action despite her increased commute and belief that

---

[2]Plaintiff chose not to contest the factual support or lack thereof for the second prong. Thus, though the second prong is not explicitly conceded by Defendant in the Motion, the Court can infer such as Defendant's argument proceeds directly to the third prong of the test. See Mot. at 12.

8

the public perceived the transfer "as a 'nudge toward retirement.'"). Again, the Tenth Circuit takes "a case-by-case approach," examining the unique factors relevant to the immediate situation. *Jeffries v. Kansas*, 147 F.3d 1220, 1232 (10th Cir. 1998). Thus, the Court considers the specific incidents of alleged adverse action below.

### i. Proposed Actions - Rawlins' Letter, Hardin's Letter and the Notice

Defendant argues that the Letters and the Notice "were nothing more than proposals to take certain personnel actions." Mot. at 13. Defendant further states that "[n]o letter of warnings were ever issued and the proposed reduction in pay never occurred." *Id*. In support of its characterization that proposals to take action differ from the acts themselves, Defendant cites to 29 C.F.R. § 1614.107(5), which provides, in pertinent part, that "[p]rior to a request for a hearing in a case, the agency shall dismiss the entire complaint . . . [t]hat is moot or alleges that a proposal to take personnel action or other preliminary steps to take a personnel action is dicriminatory."

Plaintiff asserts that Defendant's labeling of the Letters and the Notice as "proposed" is nothing more than a "tag" and urges the Court to look instead to their "effects" on his employment status. In arguing that the "proposed" actions placed him in an at-risk situation, thus negatively affecting his employment status, Plaintiff relies on the case of *Haynes v. Level 3 Communs.*, 456 F.3d 1215 (10th Cir. 2006). There, the Circuit held that "[a] written warning may be an adverse employment action only if it effects a significant change in the plaintiff's employment status." *Id.* at 1224. In citing *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998), the *Haynes* court illustrated circumstances surrounding when "the effect on the plaintiff's employment status was an immediate placement in an at-risk status." In *Roberts*, the plaintiff had received "'twenty warning letters,' and the record demonstrated 'that

9

the more warnings an employee received, the more likely he or she was to be terminated for a further infraction.'" *Id.* at 1104.

The record before the Court indicates that Plaintiff received the Letters and the Notice all within a six-week period.  Yet, no additional action was taken in furtherance of the proposed items.  Plaintiff was not demoted and did not receive a reduction in pay or a modification of responsibilities.  Further, Plaintiff admitted at his deposition that a proposed letter of warning is not a form of discipline; rather, it is merely a proposal to issue a letter of warning as its name suggests.  Mot., Ex. 3, at 42-43.  Additionally, Plaintiff admitted that the Notice never amounted to anything since he did not lose any money or benefits and did not jeopardize the terms and conditions of his employment.  Mot., Ex. 3, at 214.  These "proposed" items do not fall within the category of an adverse employment action resulting in "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing significant change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

### ii.     PIP Status

Defendant asserts that Plaintiff did not suffer an adverse employment action as a result of his placement on the PIP because there were no ill effects or significant changes to the conditions of his employment.  Plaintiff argues that the PIP is a plan in name only and violates Postal Service standards.  He points to testimony by Rawlins and Wadsworth that PIPs should give recommendations and suggestions on areas to make improvements, along with certain deadlines to achieve improvements.  Reply, Ex 2, at 30-31; Ex. 8, at 44-45.  Regardless of the effects of the PIP as perceived by Plaintiff, objectively, the effects were not materially adverse: Plaintiff was not demoted, did not receive a pay cut or a loss of benefits and did not have his

responsibilities significantly altered. *See, e.g., Haynes,* 456 F.3d at 1225 (placement on a PIP did not have any immediate effect on plaintiff's employment status; she was not demoted, her pay did not change and her responsibilities were not significantly modified.) Accordingly, Plaintiff cannot establish that placement on a PIP is tantamount to an adverse employment action.

### iii. Non-Selection for Transfer

By virtue of Plaintiff's failure to controvert Defendant's statement of material facts related to his non-selection for transfer to Oregon, the Court must treat those facts as admitted.[3] Accordingly, Plaintiff's failure to complete the application for transfer to Oregon as instructed, whether intentional or not,[4] prevents him from establishing that Hill's failure to hire him amounts to an adverse act of age discrimination.

Similarly, Plaintiff's allegations that Hardin's negative comments to Hill prevented his transfer to Oregon are without merit. Plaintiff's speculation, standing alone, does little to buoy his assertion that Hill's conversation with Hardin affected Plaintiff's chances in securing the transfer.[5] Accordingly, the fact that Plaintiff was not selected for transfer is not an adverse employment action.

---

[3] Under U.S. Dist. Ct., D.N.M.L.R. 56.1(b), on a summary judgment motion: All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted. U.S. Dist. Ct., D.N.M..L.R. 56.1(b). Plaintiff has failed to specifically address material facts 35 through 57 as presented in the Motion, which explain in detail the events surrounding Plaintiff's transfer request to Oregon.

[4] Plaintiff's testimony indicates that he was out of the office at the time that Sieren sent him an email notifying him of his application deficiency. Mot., Ex. 3, at 102.

[5] In his deposition, Plaintiff admits that his assertion that Hardin "killed his chances of getting a job at Hermiston . . ." is speculation. Mot., Ex. 3, at 32.

### iv. Involuntary Transfer to the Academy Station

Plaintiff also claims that his involuntary transfer from the Highland Station to the Academy Station constitutes an adverse employment action. Nonetheless, Plaintiff cannot demonstrate that his transfer to another station is anything more than a lateral transfer. The record reflects that the transfer did not impact Plaintiff's responsibilities, salary or benefits. Despite the fact that the transfer was made against Plaintiff's will, "[i]f a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not in and of itself render the denial or receipt of the transfer adverse employment action." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 n.6 (10th Cir. 1998). Further, a Letter of Decision signed by James Mercurio, the Human Resources Manager, regarding the Notice indicates that at either of the transfer locations, Plaintiff would still be employed at his current level. Mot., Ex. 2d. Though Plaintiff may have felt some personal discomfort associated with the transfer, a lateral transfer does not constitute an adverse employment action establishing a prima facie case of discrimination.

As Plaintiff cannot demonstrate a prima facie case of age discrimination under *Sorbo* with respect to the Letters, the Notice, the PIP, the non-selection for transfer to Oregon and the involuntary transfer to the Academy Station, the Court need not address the additional *McDonnell Douglas* factors.

### B. Hostile Work Environment

Plaintiff alleges that the collective action taken against him because he is an older worker, including "forced demotions, unjustified disciplinary action . . . involuntary reassignments, and disparate treatment with respect to the terms and conditions of his employment . . ." created a hostile work environment. See Complaint, ¶ 33; Resp. at 1. The

12

question of whether a hostile environment claim is actionable under the ADEA remains unsettled in the Tenth Circuit. *Holmes v. Regents of Univ. of Colo.*, 1999 U.S. App. LEXIS 8710, No. 98-1172, at *21, n.6  (10th Cir. May 7, 1999)(citing *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998)) (considering and deciding a hostile work environment claim under the ADEA, but not addressing the apparent lack of authority for raising such a theory). Thus, although the Tenth Circuit has not expressly recognized a cause of action for hostile work environment under the ADEA, for purposes of this Motion, the Court assumes, without deciding, that Plaintiff may advance a hostile work environment claim under the ADEA.

For an age-related hostile work environment claim to survive summary judgment, a plaintiff "must show under the totality of the circumstances that the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment, and the harassment stemmed from . . . age-related animus." *Id.* at *7 (10th Cir. May 7, 1999) (citing *Bolden v. PRC Inc.*, 43 F.3d 545, 550-51 (10th Cir. 1994)).  In determining if a work environment is sufficiently hostile, the court examines: "(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." *Id*. (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).  Moreover, the plaintiff must show that the work environment was both subjectively and objectively hostile. *Id*. (citing *Davis v. United States Postal Service*, 142 F.3d 1334, 1341 (10th Cir. 1998)).

The Court concludes that Plaintiff has failed to make a showing that he endured a hostile work environment because of his age.  Plaintiff's reliance on the allegations that the "lack of actions taken against other managers who engaged in the same and like misconduct that led to [him] being given, in the space of 5 weeks, [the First Letter], [the Second Letter], a PIP, a

demotion which [he] refused, and a proposed downgrade," Resp. at 19., does not indicate the presence of a hostile work environment. *See Lujan v. Johanns*, 181 Fed. Appx. 735 (10th Cir. 2006)(holding that an employee who received letters of warning, was placed on a restrictive leave policy and a PIP did not suffer a hostile or abusive work environment, whether those actions are considered collectively or individually, when there was no change in his employment status as a result of the actions; his job, pay and benefits all remained the same, none of the actions were objectively or subjectively offensive, and the employee was not subjected to any offensive remarks, physical threats, or humiliation).[6]

To further support his allegations of a hostile work environment, Plaintiff states that the actions taken against him were "'atypical' in light of [his] past work history." *Id.* Plaintiff's argument culminates with his assertions that the actions taken against him "undisputedly affected the terms and conditions of [his] employment - forcing him to seek medical treatment and absent himself from work for a long period." *Id.* Nonetheless, experiencing increased stress as a part of one's working conditions does not affect an employee's employment status or benefits. *See, e.g., Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994)(being reassigned to a more stressful job does not constitute an adverse employment action); *Von Gunten v. Maryland Dept. of Environment,* 68 F.Supp.2d 654, 663 (D.Md. 1999), *aff'd*, 243 F.3d 858 (4th Cir. 2001)(same)(citing *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)); *see also Lujan*, 181 Fed. Appx. at 738 (placement on restrictive leave policy, PIP and receiving letters of warning is not tantamount to a hostile or abusive work environment; rather, said evidence is indicative of "a work environment that exhibits the monitoring and job stress

---

[6] In addition, Plaintiff's own testimony establishes that Hardin did not insult Plaintiff in any way related to his age. Mot., Ex. 3, at 34, 61-63.

typical of life in the real world."(internal citations omitted)). Thus, Plaintiff has not marshaled sufficient evidence of severe, pervasive and frequent discrimination to create a genuine issue of fact. Accordingly, summary judgment will be granted as to the hostile work environment claim.

## IV. <u>Conclusion</u>

With respect to Plaintiff's ADEA claim, the Plaintiff has failed to present a prima facie case of discrimination because none of Defendant's practices amounted to adverse employment actions. With respect to Plaintiff's hostile work environment claim, Plaintiff has failed to produce evidence demonstrating how Defendant's actions created a hostile work environment.

WHEREFORE,

**IT IS ORDERED**:

Defendant's *Motion for Summary Judgment*, filed on February 2, 2007 (*Doc*. 38)("Motion") is GRANTED, and Plaintiff's Complaint is hereby dismissed with prejudice.

DATED October 16, 2007.

S/John Edwards Conway

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

Michael E. Mozes, Esq.
Albuquerque, NM

Counsel for Defendant:

Michael H. Hoses
Assistant United States Attorney
Albuquerque, NM